## GOLLWITZER v GORMAN et

Ohio Common Pleas, Cuyahoga Co

No 432938.   Decided Sept 7, 1935

## OPINION

By JOY SETH HURD, J.

The law applicable is contained in **Article 7, §1 of the Constitution of the State of Ohio, which is as follows:**

''Institutions for the benefit of the insane, blind, and deaf and dumb, shall always be fostered and supported by the state and be subject to such regulations as may be prescribed by the General Assembly.''

There can be no question that under the provisions of this Article of the Constitution that it is the duty of the state to care for the persons under consideration in the instant case and had the state provided for these persons according to the provisions of the Constitution this question would not be before the court at this time. The difficulty in the situation arises from the fact that the state institutions lacking capacity for the care of these persons and the state failing to provide funds for their care, the county has been faced with the problem of providing care until such time as the state would assume the burden imposed upon it by the Constitution. So that the question before the court at this time, without going into the merits of the case to any great extent, is whether or not with this situation confronting the county, the court should grant a temporary injunction restraining the county from certifying for payment any sums of money and from the payment of any sums of money for the care, support and maintenance of the insane, the alleged insane and mentally incompetent persons.

The court at this time, on this hearing for a temporary order, is not in any sense attempting to decide the cause on its merits. This must be left to the court upon the final hearing when all the issues are made up.

However, inasmuch as a temporary order at this time is a matter of considerable importance to all parties involved, the court has carefully considered the law on the subject as it is presented at this time to determine whether or not such a temporary order should issue.

Counsel for the County Commissioners argued that authority for their action is contained in §§3138 and 3476 GC.

Sec 3138 GC provides, as follows:

"Sec 3138-1 GC. CONTRACT BY COMMISSIONERS FOR CARE OF INDIGENT SICK:

"That the board of county commissioners of any county may enter an agreement with one or more corporations or associations, organized for charitable purposes, or with one or more corporations or associations organized for the purpose of maintaining and operating a hospital in any county where such hospital has been established, for the care of the indigent sick and disabled, excepting persons afflicted with pulmonary tuberculosis, upon such terms and conditions as may be agreed upon between said commissioners, and such corporations or associations and said commissioners shall provide for the payment of the amount agreed upon, either in one payment, or installments, or so much from year to year, as the parties stipulate. Nothing herein shall authorize the payment of public funds to a sectarian' institution. County Commissioners shall have authority to employ the necessary and properly qualified employees to assist them in carrying out all responsibilities devolving upon them by reason of any agreement, or agreements, entered into in accordance with the provisions of this section."

Sec 3476 GC provides as follows:

Sec 3476 GC. TRUSTEES AND MUNICIPAL OFFICERS SHALL AFFORD RELIEF.

"Subject to the conditions, provisions and limitations herein, the trustees of each township or the proper officers of each city therein, respectively, shall afford at the expense of such township or municipal corporation public support or relief to all persons therein who are in condition requiring it. It is the intent of this act that townships and cities shall furnish relief in their homes to all persons needing temporary or partial relief who are residents of the state, county and township or city as described in §§3477 and 3479 GC. Relief to be granted by the county shall be given to those persons who do not have the necessary residence requirements, and to those who

are permanently disabled or whose peculiar condition is such they cannot be satisfactorily cared for except at the county infirmary or under county control. When a city is located within one or more townships, such temporary relief shall be given only by the proper municipal officers, and in such cases the jurisdiction of the township trustees shall be limited to persons who reside outside of such a city."

Counsel for plaintiff in opposition to the contention of the counsel for defendants, claim that these sections of the General Code do not give the County Commissioners authority to act in the emergency, and cite §1950 GC, which is as follows:

"Sec 1950 GC. LEGAL RESIDENTS ADMITTED TO STATE HOSPITAL FOR INSANE; EXCEPTIONS—

"Any insane person who has a legal residence in the State of Ohio and whose insanity has occurred during the time of his or her residence in said state shall be entitled to admission into a state hospital for the insane. Within the meaning of this section, no person shall be considered a legal resident who has not resided in the state for one year next preceding the date of his or her application for admission to a state hospital. No person who is not a legal resident of this state shall be admitted to a state benevolent institution except upon the order of the department of public welfare as provided by law."

They also cite §3155 GC, effective September 5, of this year, familiarly known as the "McIntyre Act" the pertinent part of which is as follows:

"A person so committed shall be detained in the detention hospital until the superintendent and the probate judge determine that the person so committed is cured or is a fit subject for the state hospital. When it is determined that such person is cured he or she shall be discharged and when it is determined that such person is a fit subject for the state hospital application shall be made for his or her admission thereto as in other cases. In all cases where such alleged insane person or persons shall thereafter be declared to be insane, the cost of maintenance and care of such insane person or persons in such detention hospitals shall be paid by the state as is provided in §§1815 and 1950 GC."

Considering all the foregoing sections the court reaches the conclusion that regard-

less of whether or not there may have been some doubt prior to the passage of the so-called McIntyre Act with respect to the authority of the county commissioners to care for persons of the type referred to and in the manner complained of herein that since the effective date of such Act, namely, September 5th, the county commissioners no longer have such authority. Prior to the effective date of the McIntyre Act, so-called, there is grave doubt as to the authority of the county commissioners to perform the acts complained of. We shall not attempt to determine this question finally in this hearing.

Sec 3138 GC undoubtedly gives to County Commissioners the power and authority to care for the indigent sick and disabled by contracts with corporations and associations for such purposes and gives them authority to employ the necessary and properly qualified employees to assist them in carrying out the responsibilities devolving upon them by reason of agreements with such institutions. In the opinion of this court the words "sick and disabled" are broad enough to include those who are mentally sick and disabled. In fact the worst form of sickness is mental sickness and so far as the care and protection of the public is concerned it is just as necessary to provide for and take care of those who are mentally ill as those who are physically ill, for those who are mentally ill frequently retain their physical strength and bodily vigor and with reason dethroned are a menace to the safety of the community if permitted to roam at will or are cared for in private homes. Conceding always that it is the primary duty of the state as fixed by the constitution to care for such persons may it be said that the county commissioners acting for the county, which is a subdivision of the state, shall not, when the state fails in the performance of its duty, care for the mentally sick as well as the physically ill?

There is not a prohibitory provision contained in §1950 GC which modifies the power granted in §3138 GC. The substance of that section is that a person who is a resident of the state and whose insanity has occurred during the time of his or her residence shall be entitled to admission into a state hospital for the insane. The effect of this section is to permit a resident of this state who becomes insane the benefits of a state institution as distinguished from a non-resident of this state.

With respect to persons confined in the detention home and in the city hospital the provisions of §3476 GC afford, at the

expense of cities and townships, relief to all persons therein who are in a condition requiring it. This section further provides that relief to be granted by the county shall be given to those persons who do not have the necessary residence requirements and to those who are permanently disabled or who have become paupers and to such other persons whose peculiar condition is such they cannot be satisfactorily cared for except at the county infirmary or under county control would appear to give to the county commissioners the right to provide for relief of those permanently disabled or whose peculiar condition is such that they cannot be cared for at the county infirmary.

Counsel for the commissioners urges that this gives authority for the county to detain persons in the state hospital temporarily at least. Without determining the question finally at this time we are of the opinion that the phrase "peculiar condition and totally disabled" could include those who are mentally ill and disabled by reason thereof.

The appeal at this time is made to the court as a court of equity and it is claimed that irreparable injury will follow if this temporary order is not granted. We cannot agree with this view. This is a practice which has been carried on for a considerable period of time and we know of no emergency, at least no facts are presented in the evidence which would require this court to issue summary process at this time.

We incline to the opinion that the county commissioners having acted only after the state government failed to perform its duty, acted in good faith and for the benefit of the public at large, including the plaintiff in this suit, with reasonable grounds to believe that they were doing so under proper legal authority and under proper advice. Therefore, the court denies the application of the plaintiff for a temporary order in respect to all the past acts of the county commissioners in relation to this subject.

With respect to future acts it does not appear to the court that there is any evidence before the court that the county commissioners are about to make an illegal expenditure of money. In fact, the evidence before the court is quite the contrary, as evidenced by the notice by the county commissioners to the private institutions that the county commissioners will not be responsible after September 5th, for the support and maintenance of the persons committed to their care. Holding these views, therefore, the application for a temporary order will be denied but the court will, as

soon as the issues are made up in this case, advance the same for an early hearing upon the merits. Decree accordingly. Order see Journal.